[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] CORRECTED MEMORANDUM OF DECISION
This is a paternity action in which paternity is not in dispute. The parties agree, and the court finds, that they are the biological parents of Teresa Bielecki. who was born on March 26, 1984. The plaintiff has been the primary caretaker of Teresa throughout her life. At issue is the level of support the defendant should pay to the plaintiff. Implicated in this issue is the question of the defendant's actual earnings. Additionally, the defendant claims that he is entitled to a deviation from the child support guidelines on the basis of in kind support he provides and because of a trust he created for the benefit of the plaintiff and Teresa.
Teresa lives with her mother at 10 Charis Road in Manchester, Connecticut. She has just completed the eighth grade and is presently scheduled to attend East Catholic High School in the fall.
Ms. Bielecki is employed as an administrative assistant at the Community Mental Health Group in East Hartford grossing approximately CT Page 9173 four hundred and eighty-seven ($487) a week.
Mr. Benettieri is the proprietor of a drinking establishment known as the Willow Inn. located nearby an entry gate to Pratt and Whitney in East Hartford. On his financial affidavit dated May 5, 1998, he states that his weekly gross income is one thousand, one hundred and sixty-seven ($1,167) dollars, and his weekly business expenses and taxes total one thousand, one hundred and three ($1,103) dollars. Thus, he claims that his net income from the Willow Inn is sixty-four ($64) dollars a week.
His affidavit, however, is incomplete and inaccurate. On examination, Mr. Benettieri acknowledged that he operates a "cash" business. Determining the actual income of this cash business is a task not made easy by the defendant's financial practices. From the evidence, it appears that he deposits his daily receipts into a bag which he keeps barside, and he retrieves cash from this bag whenever he needs funds. While the absence of trustworthy records makes precise determination of his actual income difficult, some insight can be gleaned by examination of the volume of his business. Mr. Benettieri acknowledged that he sells approximately twenty-five (25) cases of beer a week. He indicated that he pays between fourteen and fifteen ($14-15) dollars per case,.and he sells a bottle of beer for two dollars and twenty-five ($2.25) cents. By calculation therefore. he grosses approximately thirteen hundred and fifty,($1,350) dollars a week in bottled beer sales with a purchase cost of approximately three hundred and sixty-two ($362) dollars. With respect to liquor. Mr. Benettieri testified that he sells liquor by the shot, that there are twenty-four to twenty-five (24-25) shots in each bottle, and that his customers consume between four and five (4-5) bottles of liquor a week at a cost between two dollars and fifty ($2.50) cents and three dollars and twenty-five ($3.25) cents a shot. By calculation, his average weekly gross for liquor is approximately three hundred and seventeen ($317) dollars. Assuming liquor costs an average of ten ($10) dollars a bottle, his weekly purchase costs for liquor are approximately forty-five ($45) dollars. By this analysis, the Willow Inn's gross revenue from liquor and bottled beer alone is approximately sixteen hundred and sixty-seven ($1,667) dollars a week. Additionally, Mr. Benettieri also testified that he sells beer by the glass from a keg at a profit of approximately seventy-five ($75) dollars a week. Though he has a full service license, the defendant stated that his food sales are insignificant, averaging approximately fifteen ($15) dollars a CT Page 9174 day, or two hundred and twenty-five ($225) dollars a week. Finally, Mr. Benettieri testified that the Inn derives income from a coin operated pool table. A 1099 from Capital Vending indicates that the Willow Inn received income of thirty-seven hundred and sixty-five ($3,765) dollars from this source in calendar year 1997. In summary, it appears from Mr. Benettieri's testimony that the average weekly gross profit of the Willow Inn is as follows:
Bottled Beer $1,350 — 362 = $986
Keg Beer 75
Liquor 317 — 45 = 217
Food 225
Pool Table 72
TOTAL 1,575
On an annualized basis. this amounts to gross profit of approximately eighty-one thousand, nine hundred ($81,900) dollars. Assuming the accuracy of the expense portion of the Schedule C to Mr. Benettieri's most recently available tax return (1996), his total annual expenses, excluding the cost of foods sold, were approximately twenty-four thousand ($24,000) dollars. By calculation, utilizing his testimony concerning the quantities of liquor and food consumed, and his report to expenses to the government, it appears that Mr. Benettieri's annual taxable income from the Willow Inn is approximately fifty-seven thousand, nine hundred ($57,900) dollars, or one thousand, one hundred and thirteen ($1,113) dollars a week.
In addition to income from the Willow Inn, Mr. Benettieri owns real estate with aggregate equity of five hundred and fifty-four thousand, seven hundred ($554,700) dollars from which he derives rental income. He owns property located at 419 Main Street, East Hartford from which he receives monthly rental income of approximately two thousand, seven hundred ($2,700) dollars. He owns a single family residence located at 20 Colt Street in East Hartford which is rented for six hundred ($600) dollars a month but the tenants are currently in default. In Colchester, the defendant owns a condominium into which he plans CT Page 9175 to move. Finally, the defendant owns a condominium in Manchester which generates approximately six hundred ($600) dollars a month in rental income. From these real estate holdings, it appears that Mr. Benettieri is presently receiving three thousand and three hundred ($3,300) dollars gross rental income per month, or seven hundred and sixty-one ($761) dollars a week. None of these properties is encumbered by a mortgage. Assuming the accuracy of the expense figures posited on the defendant's financial affidavit, and including expenses for the Manchester condo equal to the Colchester condo, the defendant's total weekly expenses for these properties are one hundred and twenty-eight ($128) dollars. Therefore, his net weekly income from rental appears to be six hundred and thirty-three ($633) dollars. The court finds that Mr. Benettieri's weekly income from the Willow Inn and rental income, before payment or taxes and necessary deductions, is approximately one thousand, seven hundred and forty-six ($1,746) dollars.
Imposition of the child support guidelines would result in a child support obligation to Mr. Benettieri of two hundred and twenty-seven ($227) dollars a week. He seeks a deviation based upon alleged in-kind support he provides to Teresa, and the creation of a trust instrument through which Teresa and her mother are provided housing without any rental expense.
On July 18, 1990, Mr. Benettieri executed a trust document in which he placed a residence located at 10 Charis Road, Manchester, Connecticut into trust for the use and benefit of Teresa and Barbara Bielecki. Additionally, the trust provides for a transfer of the property to Teresa upon the death of Mr. Benettieri, or to a successor trustee should she be under the age of twenty-one on his death. Teresa's ultimate ownership of the property is subject, however, to a life use in Barbara, with a further provision for Teresa to purchase Barbara's life use should she choose.
The defendant claims that the provisions of this trust instrument, together with other in-kind contributions he has made for Teresa's support, entitle him to a deviation from strict application of the guidelines.
In this regard, the court notes that Teresa and her mother have had the use and enjoyment of the residence at 10 Charis Road for several years, thereby, reducing their housing costs. Additionally, Mr. Benettieri has provided funds directly to CT Page 9176 Teresa from time to time, has purchased clothing for her, and has paid some of her schooling expenses. He has not, however, provided any funds to Teresa's mother to assist her in caring for Teresa.
Apart from the trust provisions, Mr. Benettieri's in kind contributions would not entitle him to a deviation. He has chosen not to assist Ms. Bielecki financially but rather to lavish presents and entertainment on Teresa at his whim and under his terms. While the court does not doubt that he has acted out of love for Teresa, and his direct payments to her may satisfy his need for paternal fulfillment, these payments are no substitute for direct financial assistance to Teresa's primary caretaker. In fact, Mr. Benettieri has chosen to pay for private education for Teresa, with no doubt laudable intentions, without regard to Ms. Bielecki's need for more basic support.
The court feels differently about the trust property. As a result of this conveyance, Ms. Bielecki's housing expenses for herself and for Teresa have been significantly reduced. While not the precise measure of this benefit, Valerie Chase. a real estate appraiser, testified that the fair market rental of the property is eight hundred ($800) dollars a month.
The provisions of the Connecticut Child Support Guidelines pertain to paternity actions through C.G.S. 46b-171. The Guidelines are presumptively applicable. Favrow, v. Vargas,231 Conn. 1 (1994). Additionally, in the event the court determines to deviate from the guidelines the court must make a finding that application of the guidelines would be inequitable, and the court must articulate its reasoning. While the provision by the defendant of housing without rental or mortgage cost to Ms. Bielecki and Teresa is not among the articulated bases for deviation, the court believes that it is an equitable factor which properly falls within C.G.S. 46b-21 5a-3(b)(6)(F). The court believes it would be inequitable to disregard the trust provisions ensuring Teresa and her mother housing without rental cost during Teresa's minority.
Accordingly, the court orders the defendant to pay to the plaintiff, as child support, the sum of one hundred and fifty ($150) dollars a week.[1]
In a paternity action, the court has the authority to hold a party liable for the payment of past due support for a time CT Page 9177 period up to three years prior to the filing of the paternity petition, C f.C.G.S. 46b-160(a). Having determined that the proper amount of support is one hundred and fifty ($150) dollars a week, and noting that this action was filed on April 10, 1996, the court determines that support for the three years prior to the filing date should have been in the aggregate amount of twenty-three thousand ($23,000) dollars, an arrearage which the court so finds. This arrearage shall be discharged by the defendant to the plaintiff at the rate of fifty ($50) dollars a week until Teresa's eighteenth birthday. Thereafter, the remaining arrearage shall be discharged at the rate of one hundred and fifty ($150) dollars a week until paid.
The plaintiff seeks counsel fees and costs in the amount of six thousand, five hundred and fifty-four ($6,554) dollars. During the hearing, counsel stipulated that the plaintiff's counsel's hourly rate of one hundred and seventy-five ($175) dollars is reasonable. The court agrees. Furthermore, the court finds it appropriate to require the defendant to pay the cost of plaintiff's counsel in this matter. Litigation in this matter was caused by the defendant's insistence on genetic testing even though, as he testified, he never doubted his paternity of Teresa, and by the defendant's imprecise and unnecessarily confused financial picture. A clearer understanding of his finances was achieved only through vigorous and probing examination at trial coupled with evident pretrial discovery. The plaintiff's is awarded counsel fees and costs in the amount of six thousand five hundred and fifty four thousand ($6,554) dollars, to be paid by the defendant on or before December 31, 1998.
Finally, and most importantly. are the issues of custody and access. The plaintiff seeks an order of sole custody while the defendant proposes joint custody. The essence of joint custody is the ability, willingness, and availability of both parents to share decisions concerning the physical, emotional, cognitive, and psychological needs of their child. In this case, the plaintiff has shouldered the responsibility for raising Teresa without the active participation or assistance of the defendant. While it is obvious to the court that he cherishes his daughter and has provided her with gifts and enjoyments, the plaintiff alone has borne the responsibility for parenting Teresa. There is no credible evidence before the court that the defendant has the ability or inclination to cooperatively share decisions with the plaintiff regarding Teresa's best interests and needs. Custody, CT Page 9178 of Teresa is awarded to the plaintiff. As to the defendant's access, Teresa is of sufficient age to be able to work out arrangements directly with her father for their continuing and close relationship. Access shall be as arranged between the defendant and Teresa.
Judgment may enter accordingly.
Bishop, J.